[Argued November 21, 1893; decided January 29, 1894.]

## COLEMAN *v.* OREGONIAN R. R. CO.

### [S. C. 35 Pac. Rep. 656.]

LIENS ON RAILROADS— PRIORITIES— LAWS, 1889, P. 75.— The lien on railroads given by Laws, 1889, p. 75, attaches only for the amount actually due to the principal contractor from the railroad company at the time the notice is served; previous transfers of or liens upon such fund will take precedence of the notice provided by said act.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

This was a suit brought by R. R. Coleman against the Oregonian Railroad Company to foreclose a subcontractor's lien under the act of February twenty-fifth, eighteen hundred and eighty-nine: Laws, 1889, p. 75. From the pleadings and evidence it appears that in August, eighteen hundred and ninety, the defendant corporation contracted with one Burch to furnish three thousand cords of wood, to be delivered in certain quantities and at stated intervals, alongside its railroad track, for which it agreed to pay two dollars and forty cents a cord, on the twentieth day of each month, for the wood delivered during the preceding month. In October, eighteen hundred and ninety, Burch sublet to plaintiff a contract for cutting the wood at a stipulated price per cord, to be paid as payments were made to him by the company. On January twentieth, eighteen hundred and ninety-one, there was due the plaintiff, on his contract with Burch, the sum of eleven hundred and thirty dollars for wood cut and delivered during the preceding month, and for which the company was indebted to Burch in the sum of fourteen hundred eighty-eight dollars and twenty-five cents. In order to secure a lien upon the property of the company for the money due him, the plaintiff, on Janu-

ary twenty-second, eighteen hundred and ninety-one, served a notice in writing, as required by section 2 of the act of eighteen hundred and eighty-nine, on the manager of the defendant corporation, at its principal office in the city of Portland. Prior to the service of this notice, however, the money due Burch from the corporation had been garnished under an execution issued on a judgment in favor of one Dawson, recovered in an action brought by him against R. Burch, whom we think the evidence clearly shows to be the same person to whom the company was indebted, and the money had been paid over to the sheriff on the execution. The lien was sustained to the full extent by the court below, and the defendant appeals.                                        REVERSED.

*Mr. Lewis L. McArthur ( Messrs. Earl C. Bronaugh, Wm. D. Fenton, Earl C. Bronaugh Jr., Wm. M. and Harry M. Cake on the brief), for Appellant.*

*Mr. William T. Muir, for Respondent.*

Opinion by MR. JUSTICE BEAN.

Upon these facts the important question for decision relates to the priority of lien between a judgment creditor of a railroad contractor who has duly garnished or levied upon the amount due his debtor from the company, and a subcontractor who, subsequent to the service of the garnishee process, gave the notice of lien required by the act under consideration. Section 1 of the law which governs the rights of the plaintiff in this case provides that any person who shall, as subcontractor, material-man, or laborer, furnish to any contractor of a railroad corporation any fuel, ties, materials, supplies, or other article or thing, or who shall do or perform any work or labor for such contractor, in conformity with the

terms of any contract which such contractor may have with a railroad corporation, shall have a lien upon all the property, real, personal and mixed, of said railroad corporation; "*provided*, such subcontractor, material-man, or laborer shall have complied with the provisions of this act, but the aggregate of all the liens hereby authorized shall not in any case exceed the price agreed upon in the original contract to be paid by such corporation to the original contractor. Nor shall such corporation be liable for any greater sum than the amount then actually due by such corporation to said original contractor; *and provided further*, that no such lien shall take priority over existing liens." Section 2 provides, in substance, that the person performing such labor shall cause a notice in writing of his intention to claim such lien to be served upon the officer of the corporation upon whom service of summons may be made, at the principal office of the company. This statute, in effect, provides that every subcontractor, material-man, or laborer performing work or furnishing material for any contractor of a railroad company may, upon compliance with its terms, acquire a lien upon the property of the company to the extent of the amount due from it to the original contractor at the time the prescribed notice is given. It differs in many important particulars from the ordinary mechanics' or laborers' lien law. No provision is made for recording or filing the notice of lien in any public office, nor is there any other means provided whereby the purchaser or mortgagee of a railroad may acquire knowledge of such notice. It does not undertake to give a direct or absolute lien upon the property which has been enhanced in value by the labor or material of the lienor, nor upon the fund due the contractor from the company, but only confers upon a subcontractor, laborer, or material-man, the right to intercept and cause to be paid to him the

amount due his contractor, by giving the prescribed notice, and, if not so paid, to enforce the same as a lien against the entire property of the company; and this without any record being made or notice given of his lien other than a notice to the railway company. It is merely a means provided by which a subcontractor, laborer, or material-man who furnishes labor or material to a railroad company through a contractor may be substituted for him as a creditor of the company, to the extent of its indebtedness to such contractor at the time the notice is given, with the additional right, not given the contractor, to enforce the same as a lien against the entire property of the company if not paid.

The lien can be acquired only in the manner provided by law,— that is, by giving the prescribed notice,— and, when thus acquired, attaches only for the amount then actually due the contractor from the company. Prior to the notice, the subcontractor, laborer, or material-man has no lien, but is in the position of a general creditor, with no preferential right to be paid for his labor or material out of the fund due the contractor from the company. He may acquire a lien by giving the prescribed notice, but until he does so, no lien can attach in his favor; and, the debt due the contractor being subject to garnishment at the suit of his other creditors, the right of the attaching or execution creditor is not overreached by the notice subsequently given. The notice creates and originates the lien, and the statute provides that the corporation shall not be liable for any greater sum than the amount due the contractor at the time the notice is given and the lien attaches. If, therefore, before such notice, some general creditor, pursuing the remedies given by law, has acquired a right by garnishment under an attachment or execution, to have the entire debt applied in satisfaction of his claim, there is nothing "then" due the con-

XXV. OR.— 19.

tractor for which the lien can attach.   The subcontractor, laborer, or material-man acquires a specific lien when he gives the prescribed notice; but up to that time he is nothing more than a general creditor, without any superior qualities over other creditors, and, when he does acquire a specific lien, it is subject to the rights of other persons acquired in good faith.

We understand the rule to be, from the authorities, that under a statute like this, which gives a lien upon the giving or filing of the prescribed notice, the lienor takes his lien subject to the rights of other persons, and that whatever rights such persons may assert in or to the fund, as against the contractor or owner, whether arising from contract or operation of law, may be asserted against a subcontractor, laborer, or material-man, who might have acquired a lien by giving the notice, but has omitted to do so:   2 Jones on Liens, § 1286, *et seq.; McCorkle* v. *Herrman,* 117 N. Y. 297, 22 N. E. 948; *Stevens* v. *Ogden,* 130 N. Y. 182, 29 N. E. 229; *Dorestan* v. *Krieg,* 66 Wis. 613, 29 N. W. 576; *Craig* v. *Smith,* 37 N. J. L. 549; *Copeland* v. *Manton,* 22 Ohio St. 398.

It is claimed that the implication to be drawn from the provision that the lien given by this statute shall not take priority over existing liens is that no lien on the fund due the contractor shall have preference.   This argument assumes that the subcontractor, laborer, or material-man has, or can acquire, a lien upon the debt due the contractor from the corporation.   But no such right is given him by the statute.   His lien, when acquired, is not upon any debt owing the contractor, but upon the property of the company for the amount actually due the contractor at the time the notice is given. The provision concerning existing liens is only designed to render the subcontractor's lien subject to liens upon the property of the company, and does not affect the

question as to whether there is any debt actually due the contractor within the meaning of the law at the time the notice is given, when the debt has been previously attached at the suit of a general creditor. By giving the notice required by the statute, the subcontractor, laborer, or material-man is substituted for the contractor with the right to enforce as a lien against the property of the company, whatever claim the contractor himself might enforce against the company. If, at the time the notice is served, the contractor has no claim which he could enforce against the company, because the same has been assigned or attached, then manifestly the subcontractor can acquire none by serving his notice.

It follows from these considerations that the lien acquired by plaintiff was subject and subsequent to the rights of Dawson, and the decree of the court below must be reversed.                                   REVERSED.